IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KINGVISION PAY-PER-VIEW, LTD., | § | |
| as Broadcast Licensee of | § | |
| the January 19, 2008: | § | |
| Jones/Trinidad Event, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-0236 |
| | § | |
| MARGARITA ARCINIEGA | § | |
| SAAVEDRA BETANCOURT | § | |
| a/k/a MARGARITA A. SAAVEDRA, | § | |
| Individually and d/b/a TEQUILA | § | |
| BOOM'S MEXICAN RESTAURANT, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kingvision Pay-Per-View, Ltd., brings this action against defendant Margarita Arciniega Saavedra Betancourt a/k/a Margarita A. Saavedra, individually and d/b/a Tequila Boom's Mexican Restaurant, for violation of the Federal Communications Act of 1934 (FCA), as amended by the Federal Cable Communications Act of 1984 (Cable Act), 47 U.S.C. §§ 553 and 605. Pending before the court are Defendant's Motion to Dismiss (Docket Entry No. 5) and Plaintiff's Response to Defendant's Motion to Dismiss and Motion to Strike Affirmative Defenses (Docket Entry No. 6). For the reasons explained below, defendant's motion to dismiss will be denied, and plaintiff's motion to strike will be granted as to the affirmative defense of laches and declared moot as to the limitations defense.

### I.  **Factual Allegations**

Plaintiff alleges that it was authorized to sub-license the telecast of a boxing event held on May 19, 2008, between Roy Jones, Jr. and Felix Trinidad ("the Event") at commercial locations such as theaters, arenas, bars, clubs, lounges, and restaurants throughout the State of Texas.  On January 17, 2011, plaintiff filed suit against defendant for cable piracy in violation of the Cable Act, 47 U.S.C. § 553 and § 605.  The original complaint alleges that defendant showed a closed-circuit telecast of the Event in her commercial establishment, Tequila Boom's Mexican Restaurant, without first obtaining the rights to show the Event from the plaintiff.  Plaintiff alleges that

> 12.  Defendant misappropriated Plaintiff's licensed exhibition of the Event and infringed upon Plaintiff's exclusive rights while avoiding proper payment to Plaintiff.  Defendant's actions were committed willfully and with the express purpose and intent to secure a commercial advantage and private financial gain.

> 13.  Defendant enabled the patrons within the Establishment to view the Event to which neither Defendant nor the Establishment's patrons were entitled to do.

> 14.  The persons whom Defendant permitted to view the Event would otherwise have been able to view it at a commercial establishment only if said commercial establishment was properly licensed and authorized by Plaintiff.

> 15.  Defendant was not authorized to intercept, receive or transmit the communication of the Event or to assist in such actions in any form or at any time.[1]

------

[1]Plaintiff's Original Complaint, Docket Entry No. 1, pp. 3-4 ¶¶ 12-15.

## II.  **Defendant's Motion to Dismiss**

Asserting that plaintiff's claims are barred by the statute of limitations, defendant moves the court to dismiss plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim for which relief may be granted.

### A.    **Standard of Review**

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S.Ct. 2665 (2002).  The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  Id.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one.  The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 997 (2002) (quoting Scheuer v. Rhodes, 94 S.Ct. 1683, 1686 (1974)).  To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly,

127 S.Ct. 1955, 1974 (2007).  This "plausibility standard" requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937, 1949 (2009).

**B.   Analysis**

Citing <u>J & J Sports Productions, Inc. v. JWJ Management, Inc.</u>, 324 S.W.3d 823 (Tex. App.—Fort Worth 2010, no pet.), defendant argues that the statute of limitations applicable to plaintiff's affirmative claims for relief is the two-year statute of limitations provided by the Texas Theft Liability Act (TTLA), Tex. Civ. Prac. & Rem. Code §§ 134.001-.005.  Defendant contends that the TTLA provides the proper statute of limitations because "the TTLA makes certain theft offenses subject to civil penalties as well-including § 31.12 of the Texas Penal Code."[2]  Defendant explains that

> [u]nder § 31.12 of the Texas Penal Code, "a person commits an offense of theft of tampering with multichannel video or information services if the person, without authorization, intentionally or knowingly uses an unauthorized access device to obtain services from a multichannel video or information services provider."[3]

Citing <u>Prostar v. Massachi</u>, 239 F.3d 669, 677-78 (5th Cir. 2001), plaintiff argues that defendant's motion to dismiss should be denied because "[f]or over a decade, the statute of limitations

---

[2]Defendant's Motion to Dismiss, Docket Entry No. 5, pp. 2-3 ¶ 9.

[3]<u>Id.</u> at 3 n.3.

-4-

for Plaintiff's claims has been three years."[4]  Plaintiff explains that

> 2.  . . . Defendant cites a Texas State Court appellate case for authority that the applicable statute of limitations is two years.  [Doc. 5 at ¶ 9]; however, a close reading of the state case would have revealed the Federal authority that the statute of limitations in this case is three years.  It is fundamental that this Court is bound by Fifth Circuit precedent.  There is currently no specific "Texas cable piracy statute;" meaning, no statute exists that remotely compares to the remedies afforded by the Federal Communication Act, nor is there _any_ legislative history indicating an intent to create a comparable civil liability statute for cable piracy under Texas law.[5]

The instant dispute arises from the fact that Congress did not provide a statute of limitations when it amended the FCA with the Cable Act.  Congress has since provided a four-year limitations period for civil actions arising under federal statutes enacted after December 1, 1990.[6]  For federal statutes such as the Cable Act that were enacted before December 1, 1990, and that do not specifically provide an applicable limitations period, the general rule is to "'borrow' the most closely analogous state limitations period."  Graham County Soil & Water Conservation Dist. v. U.S.

---

[4]Plaintiff's Response to Defendant's Motion to Dismiss and Motion to Strike Affirmative Defenses, Docket Entry No. 6, p. 1.

[5]Id. at 1-2.

[6]See 28 U.S.C. § 1658.  See also Jones v. R.R. Donnelley & Sons Co., 124 S.Ct. 1836, 1845 (2004) (holding that a cause of action "arises under" an act enacted after December 1, 1990, "if the plaintiff's claim against the defendant was made possible by a post-1990 enactment").

<u>ex rel. Wilson</u>, 125 S.Ct. 2444, 2448 (2005).  Alternatively, an analogous federal limitations period may be borrowed.  <u>Id.</u>  The Supreme Court has on several occasions discussed the analysis that courts use in determining the applicable statute of limitations for federal statutes that do not expressly provide an applicable limitations period.

In <u>Agency Holding Corp. v. Malley-Duff & Associates, Inc.</u>, 107 S.Ct. 2759 (1987), the Supreme Court considered the appropriate statute of limitations for civil enforcement actions brought under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961-1968.  The Court explained that the initial inquiry in determining the appropriate limitations period is "whether all claims arising out of the federal statute 'should be characterized in the same way, or whether they should be evaluated differently depending upon the varying factual circumstances and legal theories presented in each individual case.'"  <u>Id.</u> at 2762.  The Court explained that once this determination has been made, "the next inquiry is whether a federal or state statute of limitations should be used."  <u>Id.</u>  Recognizing that the federal Rules of Decisions Act, 28 U.S.C. § 1652, generally requires application of state limitations statutes, the Court stated that in some circumstances "'state statutes of limitations can be unsatisfactory vehicles for the enforcement of federal law,'" and that in those circumstances "'it may be inappropriate to conclude that Congress would choose to

-6-

adopt state rules at odds with the purpose or operation of federal substantive law.'" <u>Id.</u> at 2762-63 (quoting <u>DelCostello v. International Brotherhood of Teamsters</u>, 103 S.Ct. 2281, 2289 (1983)).

The Court explained that "the mere fact that state law fails to provide a perfect analogy to the federal cause of action is never itself sufficient to justify the use of a federal statute of limitations," <u>id.</u> at 2763, but acknowledged that it may be appropriate to borrow a limitations period from another federal statute "when a rule from elsewhere in federal law clearly provides a closer analogy than available state statutes, and when the federal policies at stake and the practicalities of litigation make that rule a significantly more appropriate vehicle for interstitial lawmaking." <u>Id.</u>  Observing that a court could analogize a RICO claim to numerous causes of action with a multiplicity of applicable limitations periods, the Court concluded that a uniform statute of limitations was needed for RICO claims to avoid "intolerable 'uncertainty and time-consuming litigation.'" <u>Id.</u> at 2764.  The Court then concluded that the applicable limitations period should not come from state law but, instead, from the federal Clayton Act, 15 U.S.C. § 15.  In reaching this conclusion the Court emphasized the "similarities in purpose and structure between RICO and the Clayton Act, [and] the clear legislative intent to pattern RICO's civil enforcement provision on the Clayton

Act," which the Court stated "strongly counsels in favor of application of the 4-year statute of limitations used for Clayton Act claims." Id. at 2765. The Court's conclusion was also based on "the lack of any satisfactory state law analogue to RICO," id. at 2765, and the multi-jurisdictional nature of RICO cases that can be based on predicate acts that occurred in multiple jurisdictions. Id. at 2766.

In Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 111 S.Ct. 2773 (1991), the Supreme Court addressed the applicable statute of limitations for a private suit brought under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. The Court articulated a three-step, hierarchical inquiry for determining the appropriate limitations period. The Court directed lower courts to begin their analysis by considering whether the federal cause of action "encompass[es] numerous and diverse topics and subtopics . . . such that a single state limitations period may not be consistently applied within a jurisdiction." Id. at 2779. The Court explained that, if so, "federal interests in predictability and judicial economy counsel the adoption of one source, or class of sources, for borrowing purposes." Id. The Court directed lower courts to continue their analyses by considering whether a state or federal source should be used by giving particular consideration to whether the claim is multistate

in nature.  The Court explained that if a plaintiff's claim could be brought in more than one state, each with a different statute of limitations, forum shopping would "virtually guarantee complex and expensive litigation over what should be a straightforward matter." Id. (quoting Agency Holding Corp., 107 S.Ct. at 2766).  The Court directed lower courts to complete their analyses by considering whether a federal limitations period has a "closer fit" than a state law limitations period.  Id.

In North Star Steel Co. v. Thomas, 115 S.Ct. 1927 (1995), the Supreme Court determined the applicable statute of limitations for claims under the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. §§ 2101-09.  The Court explained that a statute of limitations should be borrowed from a federal source instead of a state source "when the state limitations periods with any claim of relevance would 'frustrate or interfere with the implementation of national policies'. . . or be 'at odds with the purpose or operation of federal substantive law,'" id. at 1931, but cautioned that borrowing from a federal source is a "closely circumscribed . . . [and]  narrow exception to the general rule" of borrowing from state law.  Id. at 1930 (quoting Reed v. United Transportation Union, 109 S.Ct. 621, 625 (1989)).  The Court held that the claims at issue fell "squarely inside the rule, not the exception." Id. at 1931.  The Court acknowledged that it had previously adopted a uniform federal rule for RICO claims and that in doing so, it was

influenced by the "practicalities of litigation" of RICO claims. Id. at 1932.  The Court pointed out that claims under WARN are based on an act or acts at a single site and, unlike RICO violations, "do not 'commonly involve interstate transactions.'" Id.  The Court concluded by holding that because WARN claims do not share the "multistate nature" of RICO and are so relatively simple and narrow in scope, "no [comparable] practicalities of litigation compel us to search beyond state law for a more analogous statute of limitations."  Id.

The Supreme Court has not yet determined the applicable limitations period for claims under the FCA, but the Fifth Circuit has addressed the issue.  In Prostar, 239 F.3d at 677, the Fifth Circuit held that the limitations period from the federal Copyright Act applies to civil actions under the FCA.  There, the Fifth Circuit considered whether to apply a Louisiana limitations period to claims brought under the Cable Act.  Id. at 671.  After concluding that the closest analogue under Louisiana law to the plaintiff's Cable Act claim was the tort of conversion, the Fifth Circuit declined to apply Louisiana's one-year limitations period. Id. at 675-76.  Instead, emphasizing the need for national uniformity in enforcing the FCA, the Fifth Circuit held that the application of Louisiana conversion law would undermine the implementation of the FCA because "[t]he application of state conversion law in each of the fifty states would result in widely

varying limitations periods," and would require national cable companies engaged in multistate activities to "'make fifty separate decisions' in their efforts to investigate and pursue cable piracy.'" Id. at 676-77. The Fifth Circuit concluded that "a single federal standard would eliminate these practical difficulties, facilitating resolution of the national problems addressed by the FCA," id. at 677, and that "the Copyright Act provides the appropriate federal-law analogue to . . . FCA claims." Id. Accordingly, the Fifth Circuit applied the Copyright Act's limitations period of three years to cable piracy claims. Id. at 678.

In J & J Sports, 324 S.W.3d at 823, the case that defendant cites in support of its motion to dismiss, a Texas court of appeals was faced with essentially the same dispute now before the court: whether to apply the three-year limitations period provided by the federal Copyright Act or the two-year limitations period provided by the TTLA to claims brought under the Cable Act. The Texas court acknowledged the Fifth Circuit's decision in Prostar to apply the Copyright Act's three-year limitations period to Cable Act claims, but stated that "[p]recedent of the Fifth Circuit, though persuasive, is not binding on this court," id. at 830. Instead, the court conducted its own analysis to determine which limitations period to apply. After determining (1) that "Texas has a state law analogue that parallels the federal cable piracy statutory scheme,"

-11-

id. at 831, (2) "the practicalities of litigation under the cable piracy statute do not make the application of the federal Copyright Act (or any other federal law) significantly more appropriate," id., and (3) "[t]he federal Copyright Act does not afford a closer fit to the federal cable piracy statutes than does the Texas cable piracy statutes," id. at 832, the Texas court held that the two-year statute of limitations provided by the TTLA applies to Cable Act claims in Texas.   Id.   The Texas court explained that "[b]ecause the federal policies at stake are not frustrated by applying a two-year statute of limitations, and because the practicalities of litigation under the FCA's cable piracy provisions do not counsel against borrowing Texas's two-year statute of limitations, we decline to follow Prostar."   Id. at 831.

Defendant urges this court to follow the holding of the Texas court of appeals in J & J Sports, 324 S.W.3d at 823, instead of the Fifth Circuit's holding in Prostar, 239 F.3d at 669.   But unlike the Texas court of appeals, which observed that it was not bound by the Fifth Circuit's holding in Prostar, this court is bound to follow the holding in Prostar absent a superseding holding from the Supreme Court or an en banc opinion of the Fifth Circuit.   See Seminole Tribe of Florida v. Florida, 116 S.Ct. 1114, 1129 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").   In reaching its decision to apply the

-12-

TTLA's two-year limitations period, the Texas court of appeals expressly rejected portions of the <u>Prostar</u> opinion that were necessary to the Fifth Circuit's decision to apply the Copyright Act's three-year statute of limitations to Cable Act claims, <u>i.e.</u>, the Fifth Circuit's determination that

> cable companies engage in multistate activities and would consequently be required to "make fifty separate decisions" in their efforts to investigate and pursue cable piracy.  A single federal standard would eliminate these practical difficulties, facilitating resolution of the national problems addressed by the FCA.

<u>Prostar</u>, 239 F.3d at 676-77.  The Texas appeals court also rejected the Fifth Circuit's determination that "the Copyright Act provides the appropriate federal-law analogue to . . . FCA claims." <u>Id.</u> at 677.  Based on the Fifth Circuit's decision in <u>Prostar</u>, the court concludes that the claims asserted in this action are subject to the three-year limitations period provided by the Copyright Act instead of the two-year limitations period provided by the TTLA.  Because plaintiff filed this action on January 17, 2011, for violations of the Cable Act alleged to have occurred on January 19, 2008, the court concludes that plaintiff's claims are not barred by limitations.  Accordingly, defendant's motion to dismiss will be denied.

### III.  <u>Plaintiff's Motion to Strike</u>

Asserting that "Defendant pled 'laches' as an affirmative defense, but Defendant pled only the name of an affirmative defense

. . . [and did not] plead 'enough facts to state a claim to relief that is plausible on its face,'"[7] plaintiff moves the court to strike defendant's assertion of this affirmative defense. Defendant has not responded to plaintiff's motion to strike affirmative defenses.

## A.    Standard of Review

Under Federal Rule of Civil Procedure 12(f), a "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Federal Rule of Civil Procedure 8(c) requires a defendant to "plead an affirmative defense with enough specificity or factual particularity to give the plaintiff 'fair notice' of the defense that is being advanced." Rogers v. McDorman, 521 F.3d 381, 385 (5th Cir. 2008) (quoting Woodfield v. Bowman, 193 F.3d 354, 362 (5th Cir. 1999)).

## B.    Analysis

The doctrine of laches is the equitable counterpart to the statute of limitations.  "To establish that a cause of action is barred by laches, 'the defendant must show (1) a delay in asserting the right or claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the defendant.'" Johnson v. Crown Enterprises, Inc., 398 F.3d 339, 344 (5th Cir. 2005) (quoting

---

[7]Plaintiff's Response to Defendant's Motion to Dismiss and Motion to Strike Affirmative Defenses, Docket Entry No. 6, p. 2 ¶ 3.

Goodman v. Lee, 78 F.3d 1007, 1014 (5th Cir. 1996)).  Although defendant has asserted laches as an affirmative defense, defendant has not alleged any facts that provide plaintiff fair notice of the defense that is being advanced.  Defendant has not pleaded any facts that, if true, would prove that plaintiff delayed in asserting its claim, that the delay was not excusable, or that defendant suffered undue prejudice as a result of plaintiff's delay.  Accordingly, the court concludes that plaintiff's motion to strike the affirmative defense of laches should be granted because defendant's assertion of this defense is not sufficient to provide plaintiff fair notice of the defense that is being advanced.  See Rogers, 521 F.3d at 385.

## IV.  Conclusions and Order

For the reasons explained above, Defendant's Motion to Dismiss (Docket Entry No. 5) is **DENIED**, and Plaintiff's Motion to Strike Affirmative Defenses (Docket Entry No. 6) is **MOOT** as to the affirmative defense of limitations and is **GRANTED** as to the affirmative defense of laches.

**SIGNED** at Houston, Texas, on this 19th day of May, 2011.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-15-